T.C. Summary Opinion 2011-15


UNITED STATES TAX COURT


SHAWN COLLEEN AND DAVID LEE BLANCHETTE, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 9742-09S.            Filed February 17, 2011.


Shawn C. and David L. Blanchette, pro sese.

<u>Mark Schwarz</u>, for respondent.


LARO, <u>Judge</u>:  This case was heard pursuant to the provisions of section 7463 of the Internal Revenue Code in effect when the petition was filed.[1]  Pursuant to section 7463(b), the decision to be entered is not reviewable by any other court, and this opinion shall not be treated as precedent for any other case.

_____

[1]Subsequent section references are to the applicable versions of the Internal Revenue Code.  Rule references are to the Tax Court Rules of Practice and Procedure.

Petitioners petitioned the Court to redetermine deficiencies of $3,945, $1,875, and $2,858 in their Federal income taxes for 2005, 2006, and 2007, respectively. We decide whether petitioner Shawn Colleen Blanchette's (Ms. Blanchette) activity of selling science fiction memorabilia was an "activity not engaged in for profit" under section 183. We hold that Ms. Blanchette was not engaged in her activity for profit.

## Background

Some of the facts have been stipulated and are so found. The stipulated facts and the exhibits submitted therewith are incorporated by this reference.

Petitioners David Lee Blanchette (Mr. Blanchette) and Ms. Blanchette resided in Las Vegas, Nevada, when their petition was filed. Mr. Blanchette was a software engineer who earned $77,145, $82,925, and $86,238 in 2005, 2006, and 2007, respectively. Ms. Blanchette became an avid reader of science fiction literature in 1976. Since that time, her passion for science fiction has grown steadily, and she has now been a collector of related memorabilia for more than 20 years. As early as 1987, Ms. Blanchette has bought and sold science fiction memorabilia retail.

In 1992 Ms. Blanchette formed and operated a proprietorship under the name A Wrinkle in Time (AWIT). From 1992 through 1995 Ms. Blanchette operated AWIT as a retail store in Santa Clara,

California, leasing space and obtaining a business license to do so. Ms. Blanchette was the primary business owner and was intimately involved with all aspects of the business. On average, she worked at her store 14 hours per day, 7 days a week. Ms. Blanchette aggressively promoted AWIT locally with newspaper advertisements and regionally at science fiction conventions. Although Ms. Blanchette adopted a business plan in 1993 to transform AWIT into a partnership that could further penetrate the science fiction memorabilia market, she never executed that plan. Despite Ms. Blanchette's efforts, her collectibles activity generated losses from 1992 through 1995.

In 1996 Ms. Blanchette relocated to Sunnyvale, California, where she operated AWIT as a retail store in leased space until 2001. During that time, Ms. Blanchette developed a Web site to sell her collection to online customers. Although she adopted a second business plan in 2000 to rebrand AWIT's online image, Ms. Blanchette did not bring that plan to fruition. She continued to incur losses from 1996 through 2001.

In 2001 Ms. Blanchette relocated to Las Vegas, Nevada. From 2002 through 2005 Ms. Blanchette sold science fiction memorabilia mostly online and at conventions. During that time Ms. Blanchette rented warehouse space to store her collection; and although the warehouse was generally not open to the public, she

would sometimes show that collection to potential customers.  Ms. Blanchette incurred losses from 2002 through 2005.

In 2005 petitioners inherited real estate (second home) from Mr. Blanchette's mother.  Ms. Blanchette subsequently moved her collection from the warehouse to the second home and used that home exclusively as a storage unit for her collection.  Ms. Blanchette continued to add to her collection while also selling items online and at conventions with the help of Mr. Blanchette.

Ms. Blanchette valued the collection in 2005, 2006, and 2007 at $279,369, $294,166, and $299,560, respectively.  She provided a generalized list of the items making up that collection, a sampling of which is as follows:

| Description | 2005 Quantity | 2006 Quantity | 2007 Quantity |
|---|---|---|---|
| Art | 922 | 922 | 874 |
| Autographs | 5,000 | 5,500 | 6,000 |
| Bumper stickers | 2,170 | 2,170 | 2,100 |
| Comic books | 7,700 | 7,175 | 6,475 |
| Keychains | 420 | 420 | 360 |
| Magazines | 420 | 490 | 525 |
| Miniatures | 468 | 468 | 468 |
| Needlework patterns | 500 | 500 | 500 |
| Photos | 17,907 | 18,807 | 19,207 |
| Postcards | 3,226 | 3,226 | 2,664 |
| Record albums | 428 | 428 | 428 |
| Stickers | 380 | 425 | 370 |
| Trading card sets | 405 | 405 | 410 |
| Trading cards | 175,000 | 175,000 | 175,000 |
| T-shirts | 10,889 | 11,353 | 11,641 |

Ms. Blanchette did not insure her collection and states that some of the comic books and trading cards are worthless.

During 2005, 2006, and 2007 (subject years) Ms. Blanchette's collectibles activity generated gross receipts of $78,094, $82,428, and $89,525, respectively. Petitioners claimed losses from the operation of their collectibles activity on the Schedules C, Profit or Loss From Business, attached to their Federal income tax returns as follows:

|  | 2005 | 2006 | 2007 |
|---|---|---|---|
| Gross receipts | $78,094 | $82,428 | $89,525 |
| Cost of goods sold | 57,097 | 49,526 | 57,718 |
| Other income | 283 | -0- | -0- |
| Gross income | 21,280 | 32,902 | 31,807 |
| Operating expenses | 47,577 | 48,683 | 59,881 |
| Income/(Loss) | (26,297) | (15,781) | (28,074) |

Ms. Blanchette's collectibles activity has not yielded a net financial profit during any year from 1992 through 2007, and total losses are estimated to be between $300,000 and $350,000.[2]

During the subject years, Ms. Blanchette devoted between 6 and 8 hours per day, 7 days a week, to her collectibles activity. On average, Ms. Blanchette would spend 200 days per year working out of her home, during which time she processed orders, responded to customers' inquiries, verified inventory, and prepared for conventions. On average, petitioners attended 18 conventions per year. In 2005, 2006, and 2007 petitioners spent 119, 78, and 96 days, respectively, driving to and selling at various conventions. On average, they drove 650 miles per day

---

[2]In 2008 and 2009 petitioners reported profits in their collectibles activity of $745 and $319, respectively.

for 14 hours per day in order to attend these conventions.  Once there, petitioners would typically work 11.5 hours per day taking no breaks for meals.  Petitioners would display the collection on two to five tables and paid approximately $300 per table.

For the subject years Ms. Blanchette kept spreadsheets of the income and expenses related to her collectibles activity.  She also maintained a separate checking account and credit card though she did not engage in direct advertising.  Ms. Blanchette presented various State tax forms and statements which she received between 2007 and 2009.

Respondent issued to petitioners a notice of deficiency dated January 22, 2009, disallowing petitioners' deductions for Schedule C expenses for each of the subject years.  Respondent determined that the expenses reported on Schedules C were not allowable as trade or business expenses because petitioners did not establish that AWIT was a bona fide business venture entered into for profit.  Petitioners petitioned the Court, and on October 27, 2010, a trial was held in Las Vegas, Nevada.  Ms. Blanchette was the only witness to testify.

<u>Discussion</u>

Respondent disallowed petitioners' Schedule C expense deductions for the subject years because respondent determined that Ms. Blanchette's collectibles activity was an activity not engaged in for profit within the meaning of section 183.

Petitioners argue generally that those expenses were deductible as section 162 ordinary and necessary business expenses incurred in connection with Ms. Blanchette's trade or business. For the reasons set forth below, we hold for respondent.

The Commissioner's determinations in a notice of deficiency are presumed correct, and the taxpayer bears the burden of proving that those determinations are in error. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933). Pursuant to section 7491(a), the burden of proof as to factual matters may shift to the Commissioner under certain circumstances. Petitioners have not alleged that section 7491(a) applies, nor have they established their compliance with the substantiation and recordkeeping requirements of the Internal Revenue Code. See sec. 7491(a)(2)(A) and (B). Accordingly, petitioners bear the burden of proof.[3]

Section 183, which applies to activities engaged in by individuals, generally limits deductions for an activity not entered into for profit to the amount of the activity's gross income. Sec. 183(b). Section 183(c) defines an activity not engaged in for profit as "any activity other than one with respect to which deductions are allowable for the taxable year under section 162 or under paragraph (1) or (2) of section 212."

---

[3]Sec. 183(d) provides for a statutory reversal of the burden of proof if petitioners meet certain criteria. Petitioners do not meet those criteria.

Section 162 allows as a deduction all the ordinary and necessary expenses paid or incurred in carrying on an activity which constitutes a trade or business of the taxpayer. Section 212 allows as a deduction all the ordinary and necessary expenses paid or incurred in carrying on an activity which is for the (1) production or collection of income, or (2) management, conservation, or maintenance of property held for the production of income.

The Court of Appeals for the Ninth Circuit, to which an appeal in this case would lie but for the provisions of section 7463(b), has held that for a taxpayer's expenses to be deductible under section 162 or 212 (and thereby avoid the limitations of section 183), the taxpayer must demonstrate that his or her "predominant, primary or principal" objective in engaging in the activity was to realize an economic profit independent of tax savings. Wolf v. Commissioner, 4 F.3d 709, 713 (9th Cir. 1993), affg. T.C. Memo. 1991-212. The taxpayer's expectation of profit need not be reasonable, but it must be bona fide. See sec. 1.183-2(a), Income Tax Regs. The existence of such a profit objective is a question of fact to be determined based on the surrounding facts and circumstances. Golanty v. Commissioner, 72 T.C. 411, 426 (1979), affd. without published opinion 647 F.2d 170 (9th Cir. 1981); see also sec. 1.183-2(b), Income Tax Regs. While such an analysis necessarily requires an inquiry into the

subjective intent of the taxpayer, we may also look to objective indicia to determine the taxpayer's true intent.  See Indep. Elec. Supply, Inc. v. Commissioner, 781 F.2d 724, 726 (9th Cir. 1986), affg. Lahr v. Commissioner, T.C. Memo. 1984-472; see also sec. 1.183-2(a), Income Tax Regs.

Section 1.183-2(b), Income Tax Regs., sets forth a nonexclusive list of nine factors to be considered when ascertaining a taxpayer's intent.  These factors are:  (1) The manner in which the taxpayer carries on the activity; (2) the expertise of the taxpayer in carrying on the activity; (3) the time and effort expended by the taxpayer in carrying on the activity; (4) the expectation that assets used in the activity may appreciate in value; (5) the success of the taxpayer in carrying on other similar or dissimilar activities; (6) the taxpayer's history of income or loss with respect to the activity; (7) the amount of occasional profits, if any, which are earned by the taxpayer; (8) the financial status of the taxpayer; and (9) elements of personal pleasure or recreation.  No single factor is conclusive, and we may accord certain factors greater weight than others.  Golanty v. Commissioner, supra at 426; Allen v. Commissioner, 72 T.C. 28, 34 (1979); see also sec. 1.183-2(b), Income Tax Regs.

Ms. Blanchette testified that she had an honest objective in making a profit from her collectibles activity.  She also

testified that she has reinvented her business to make the collectibles activity more profitable.  In determining whether Ms. Blanchette had the requisite profit objective to avoid the limitations of section 183, we give limited weight to her testimony and greater weight to the objective factors listed above.  <u>Keanini v. Commissioner</u>, 94 T.C. 41, 46 (1990); <u>Dreicer v. Commissioner</u>, 78 T.C. 642 (1982), affd. without published opinion 702 F.2d 1205 (D.C. Cir. 1983); sec. 1.183-2(a), Income Tax Regs.  We discuss each of the enumerated factors in turn.

1.    <u>Manner in Which the Activity Is Conducted</u>

That a taxpayer carries on an activity in a businesslike manner, maintains complete and accurate books and records, and changes operating methods to increase profitability may indicate that an activity is engaged in for profit.  <u>Engdahl v. Commissioner</u>, 72 T.C. 659, 666-667 (1979); sec. 1.183-2(b)(1), Income Tax Regs.

Petitioners separated their personal finances from Ms. Blanchette's collectibles activity and kept records of the income and expenses associated with that activity.  Those records, however, basically served to substantiate the expenses which petitioners claimed on their Federal income tax returns.  The existence of a separate bank account and credit card, we believe, facilitated the ease of recordkeeping.  However, as we have previously recognized:

The purpose of maintaining books and records is more than to memorialize for tax purposes the existence of the subject transactions; it is to facilitate a means of periodically determining profitability and analyzing expenses such that proper cost saving measures might be implemented in a timely and efficient manner. * * *  [Burger v. Commissioner, T.C. Memo. 1985-523, affd. 809 F.2d 355 (7th Cir. 1987).]

Ms. Blanchette undertook no such financial analysis.  She did not prepare budgets, income statements, balance sheets, forecasts, or any other financial statement which would lead us to believe that she used her accounting records to improve her bottom line.  The lack of financial analysis weighs against the existence of a trade or business during the subject years.  See Filios v. Commissioner, T.C. Memo. 1999-92, affd. 224 F.3d 16 (1st Cir. 2000); Sullivan v. Commissioner, T.C. Memo. 1998-367, affd. without published opinion 202 F.3d 264 (5th Cir. 1999).

Petitioners contend that the online expansion of Ms. Blanchette's collectibles activity demonstrates that she sought to improve the profitability of her activity during the subject years.  We disagree.  The adaptation of Ms. Blanchette's collectibles activity online occurred some time between 1996 and 2000.  Since she moved her collectibles activity online, we have found no significant undertakings on the part of Ms. Blanchette to improve her overall profitability.  To the contrary, she continued to add to her inventory without due regard for the losses she repeatedly incurred.  This factor favors respondent.

2.  Ms. Blanchette's Expertise

A taxpayer's extensive study of the accepted business and economic practices of an activity, as well as the taxpayer's consultation with experts, may indicate a profit objective.  Sec. 1.183-2(b)(2), Income Tax Regs.

Ms. Blanchette testified that she consulted with other science fiction memorabilia collectors about her activity. However, she never consulted with accountants, lawyers, or business advisers about her activity.  The failure to procure objective business advice is a negative factor while her consultation with other collectors is a positive consideration. This factor is neutral.

3.  Ms. Blanchette's Time and Effort

The fact that a taxpayer devotes much personal time and effort to carrying on an activity may indicate a profit objective, particularly where that activity does not involve substantial personal or recreational aspects.  Sec. 1.183-2(b)(3), Income Tax Regs.  That Ms. Blanchette devoted significant personal time and effort to collecting science fiction memorabilia supports her claim that she entered into the collectibles activity with a profit objective.  See id.  However, as we discuss below, collecting science fiction memorabilia has substantial personal or recreational aspects for Ms. Blanchette. See id.  Thus, this factor is neutral.

4. <u>Expectation That Assets Will Appreciate in Value</u>

A taxpayer's expectation that assets used in an activity may appreciate in value to create an overall profit may indicate a profit objective as to that activity. <u>Golanty v. Commissioner</u>, 72 T.C. at 427-428; sec. 1.183-2(b)(4), Income Tax Regs.

Our decision in <u>Kling v. Commissioner</u>, T.C. Memo. 2001-78, is illustrative. Therein, we decided whether a taxpayer who collected sports memorabilia with the hope that his collection would appreciate in value was engaged in a trade or business. Over the years, Mr. Kling sold only a few items from his collection and retained much more than he sold. As compared with his purchases, the selling of memorabilia was sporadic. Mr. Kling amassed items for his collection (including thousands of baseball photographs and programs) without any plan to sell those items at any date in the foreseeable future and without consideration for the costs of paying to store those items. Balancing the factors of section 1.183-2(b), Income Tax Regs., we held that Mr. Kling's memorabilia activity did not rise to the level of a trade or business.

Similar to Mr. Kling, petitioners effectively argue that the losses Ms. Blanchette has sustained over the years do not indicate a lack of profit objective because she intended to earn a profit on the overall appreciation of her collection. We disagree. First, even though a portion of Ms. Blanchette's

collection was worthless, she did not liquidate those items and reinvest the proceeds in other collectibles with potential for real appreciation.

Second, Ms. Blanchette's expectation of future appreciation in her collection is vague. Petitioners presented a generalized list of Ms. Blanchette's collection but did not include an itemized list of the individual memorabilia making up that collection. The failure to introduce such an itemized list or to provide testimony as to the value of specific components of the collection creates a presumption that no such list was kept or that it was not favorable to petitioners' position. See Wichita Terminal Elevator Co. v. Commissioner, 6 T.C. 1158, 1165 (1946), affd. 162 F.2d 513 (10th Cir. 1947). Without such a list, Ms. Blanchette had no apparent means of tracking appreciation in individual items such that she knew which items to hold and which assets to sell.

Finally, we believe that if Ms. Blanchette engaged in the collectibles activity for long-term appreciation, she would have insured her collection, as she had done in the late 1990s and early 2000s. No such insurance policy was maintained, suggesting that Ms. Blanchette was not concerned with protecting her investment. Such behavior is inconsistent with investment for long-term appreciation. This factor favors respondent.

5.    <u>Ms. Blanchette's Success in Similar Activities</u>

Although an activity is unprofitable, the fact that a taxpayer has previously converted similar activities from unprofitable to profitable may show a profit objective.  Sec. 1.183-2(b)(5), Income Tax Regs.  Petitioners offered no evidence regarding the success of Ms. Blanchette in comparable activities.  Thus, this factor is neutral.

6.    <u>Activity's History of Income and/or Losses</u>

The fact that a taxpayer incurs a series of losses beyond an activity's startup stage may indicate the absence of a profit objective as to that activity unless the losses can be blamed on unforeseen or fortuitous circumstances beyond the taxpayer's control.  <u>Hildebrand v. Commissioner</u>, 28 F.3d 1024, 1027 (10th Cir. 1994), affg. <u>Krause v. Commissioner</u>, 99 T.C. 132 (1992); sec. 1.183-2(b)(6), Income Tax Regs.

Petitioners contend that their gradual increase in gross receipts and profits in recent years evidences a bona fide profit objective.  We disagree.  First, while the increase in gross receipts in isolation may demonstrate growth in a business, Ms. Blanchette's operation of the collectibles activity in a net loss position and her failure to take any remedial measures to correct those losses evidence a lack of profit objective.  Second, the effort and time which Ms. Blanchette has expended on her collectibles activity, when weighed against the nominal profits

earned, do not reflect a predominant, primary, or principal profit objective. Ms. Blanchette worked on the collectibles activity between 2,100 and 2,800 hours per year. Thus, even in the most profitable of years, she earned between 27 cents and 36 cents per hour for her efforts, not to mention the time and effort spent by Mr. Blanchette.[4] But for the corresponding tax benefit to offset Mr. Blanchette's salary, we believe there was no profit objective in Ms. Blanchette's behavior.

Third, petitioners present no forecasts, budgets, or other financial analyses to support Ms. Blanchette's blanket assertion that she expects future growth in her collectibles activity sufficient to recoup losses sustained in prior years. See Bessenyey v. Commissioner, 45 T.C. 261, 274 (1965), affd. 379 F.2d 252 (2d Cir. 1967). Even assuming arguendo that Ms. Blanchette continued to earn profits commensurate with her highest grossing year, it would take Ms. Blanchette approximately 400 years to recoup the losses incurred between 1992 and 2007.[5] Ms. Blanchette testified at trial, without elaboration, that the losses which she sustained in operating AWIT were attributable to a number of factors beyond her control. The record does not

---

[4]Ms. Blanchette's hourly wage is calculated by dividing the profit she reported in 2008 by the total hours worked.

[5]The recoupment period is determined by dividing estimated losses of $300,000 by net income of $745.

support the existence of any such fortuitous circumstances, and we decline to infer them. This factor favors respondent.

7. The Amounts of Occasional Profits

The amount of profits earned in relation to the amount of losses incurred, the amount of the investment, and the value of the assets in use may indicate a profit objective. See sec. 1.183-2(b)(7), Income Tax Regs.

Between 1992 and 2007 Ms. Blanchette failed to realize a profit on her collectibles activity. Even the nominal profits earned in 2009 and 2010 were substantially disproportionate to the amount of time and effort she expended on her collectibles activity. We do not believe that the promise of annual profits of $745 is sufficient to outweigh the absence of profits for 16 years. See McKeever v. Commissioner, T.C. Memo. 2000-288. This factor favors respondent.

8. Taxpayer's Financial Status

That a taxpayer has substantial income from sources other than the activity may indicate that the activity is not engaged in for profit. Sec. 1.183-2(b)(8), Income Tax Regs. Such is especially so where losses from the activity generate substantial tax benefits or where there are personal or recreational elements involved. Sec. 1.183-2(b)(9), Income Tax Regs.

During the subject years, Mr. Blanchette earned a steady salary as a software engineer on which petitioners subsisted.

Mr. Blanchette's salary enabled Ms. Blanchette to pursue her longtime passion of collecting science fiction memorabilia while the reported losses from that activity were used to reduce their taxable income. See Giles v. Commissioner, T.C. Memo. 2005-28. This factor favors respondent.

9. Elements of Personal Pleasure

The presence of personal pleasure or recreation from an activity may indicate the absence of a profit objective. Sec. 1.183-2(b)(9), Income Tax Regs. The mere fact that a taxpayer derives personal pleasure from an activity, however, does not necessarily mean that the taxpayer lacks a profit objective with respect to that activity. "[A] business will not be turned into a hobby merely because the owner finds it pleasurable; suffering has never been made a prerequisite to deductibility." Jackson v. Commissioner, 59 T.C. 312, 317 (1972).

Ms. Blanchette is passionate about science fiction, and she derives great pleasure from her collectibles activity. This enjoyment, however, cannot overcome the complete disregard for profit objective with which she has conducted her activity. Given the small profit potential and significant satisfaction derived from the collectibles activity, we are confident that it is Ms. Blanchette's quest for personal gratification that keeps her going and not any bona fide profit objective. See Betts v. Commissioner, T.C. Memo. 2010-164; cf. Maximoff v. Commissioner,

T.C. Memo. 1987-155 (relying on the taxpayer's abandonment of an unprofitable business venture as proof that the taxpayer was engaged in a trade or business).  This factor favors respondent.

Balancing the above factors and the facts and circumstances in this case, we conclude that Ms. Blanchette did not pursue her collectibles activity during the subject years with a predominant, primary, or principal profit objective.  Petitioners are therefore not entitled to a deduction under section 162 or 212.  It follows naturally that section 183 limits the allowable deductions to the amount of gross income generated from that activity.  We have considered all arguments made by the parties and to the extent that we have not specifically addressed them, we conclude that they are without merit.

To reflect the foregoing,

<u>Decision will be entered for respondent</u>.